Case number 22-1388, Patricia Levine v. Louis DeJoy. Court argument is not to exceed 15 minutes per side. Mr. Smith, you may proceed for the appellant. Thank you. May it please the Court, my name is Glenn Smith. I'm with the law firm Wheeler Upham. We represent the appellant Patricia Levine. I reserve five minutes for rebuttal. All right. The question here is whether the plaintiff has presented enough facts to get to a jury, not whether the plaintiff is entitled to a judgment. We think she has. We think the district court in this case erred when it granted summary judgment because it did not properly apply the Bender standard that would allow her to present evidence of relevant qualifications to establish pretext. We also submit that there is evidence that the deciding official, who is Caucasian, did not select the plaintiff because of her race and that she, in fact, engaged in mendacity and had engaged in testimony that was disgenuous and otherwise called into question her credibility. The plaintiff in this case was eminently qualified for the position. She had 20 more years' experience as a postal employee than the person selected for the job. I assume you looked at the qualifications they posted? Yes. And both candidates met those, right? Yes, they both got out of the panel. So they both referred from the panel to the deciding official as qualified. As one of the five. And you're not disputing that they both met those? No. So does a business get to define the qualifications for the position? Or should a court be defining them? No, I think that the employer gets to define the qualifications. However, in this situation, you had qualifications that were generic in nature. Well, let's talk about that for a second. So what factors can an employer choose in deciding between two qualified candidates? Are they at liberty to look at what qualifications they think are important? Or are we imposing some on them? No, I think that they're at liberty for establishing them. On the other hand, there's common-sense qualifications that a jury could infer from that the plaintiff in this case was far more qualified than the selected candidate. Well, let's take a step maybe where I understand a position. So if I'm trying to hire a criminal defense attorney, because I need another criminal defense attorney, and am I better off the Harvard-educated Supreme Court clerk who's working in a fancy law firm has impeccable credentials, whereas the kid educated maybe at Kentucky Law School who goes and becomes a public defender doesn't have those same fancy credentials. Can I pick which is more qualified for that position? And that is there's the assumption that both of them have to have a law degree. Right. Well, both graduated law school. Right. Kentucky's accredited. Right. In this case, you have someone who has a master's degree in business versus someone who has No, wait. Answer my hypo first. Can I pick the public defender? Assuming that there's no other evidence such as mendacity or other things that would call into question the decision, then yes. But you're assuming they're a different race, different color or sex. Right. But in this, you have to go, there's common sense here. You have the deciding official saying that, well, I thought this was important, that was important. Those are all subjective things. For example, she said, well, I wanted someone who could go work in another office to manage carriers. Well, that's not the position that was at issue here. This was a position that managed only a retail setting. And so that becomes a subjective thing that a jury should be able to decide whether or not Can I ask you, if we flip their backgrounds, just flip their backgrounds. Assume Levine has Pierre's background and Pierre has Levine's. Okay. Yes. And Levine's got the stock for 23 months. Right. So Levine's Pierre and Pierre's Olivier. And the only thing we do is they do this whole process and they remove Levine and put Pierre in place because of her superior education and length of service and the other reasons you gave. Would Levine have a discrimination claim? It depends on how the deciding official testifies and whether or not she's The same exact thing has happened here. Would she have a claim? Sure. If you had the same exact facts, then you would have a claim that should go to a jury to decide whether or not there's discrimination. If she got removed. So if she was Pierre and got removed so Levine could have the job and she was the black official and a Caucasian official was put in with 23 years experience, superior education, whatever, you'd say she has a claim. Yes. If there is the same fact scenario, yes, there would be a claim. We think that you have a deciding official who would not admit the obvious, trying to defend her position. She would not admit that the plaintiff had more experience, you know, postal experience, for example. She made representation that my client did not want to learn how to be a carrier supervisor, which is simply not true. She was never asked. That's a question of fact. These are all questions of fact that go into the decision-making, whether or not the postmaster in this case was justifying her decision based on subjective things. Hypothetically, should the postmaster consider relevant experience versus general? Yes. She can always consider relevant experience. Can they consider management style versus management experience? Yes. They can consider management style. However, that and the case law that's cited in my brief, there are examples where they said, well, this manager is overly aggressive, and they have found that that would be. One last question, and I'll be quiet. How do you deal with the Provenzo case that the district court cited and that your friend on the other side cited? I'm sorry. Which is under what premise? Our case, Judge Strange's case that said performance matters even though a person has a better education and works there longer doesn't give rise to pretext. Okay. Performance does matter. However, in this situation, my client's performance was superior. She managed the office for seven months, got it to appointment. Provenzo is the same way, right? Of course you're arguing hers was superior, but this peer was in the position for 23 months. In Provenzo, I don't even think she had a high school degree. The other person was claiming they had a college degree and everything else and was claiming and had worked at the company longer and was claiming they were entitled to that position. Our court said no. At that point, it's up to the judgment of the business. First of all, I don't think she was in the position 23 months. As I've explained, I think she was only in the position for less than a year. But in terms of the—you're always going to get into a position where you have business judgment, whether someone is claiming racism, that they weren't selected for race. The questions become are they entitled to get to a jury to let them decide? And when you look at the Supreme Court case in Hicks and St. Mary's Honor Center, when you have mendacity, which we have here, there was a misrepresentation as to my client's skill to justify why she was not selected. There is a statement early on that they both have skills and benefits and good things and bad things about them, but the deciding official could not name one bad thing or one thing that the person she selected lacked, even though she had said that there were strengths and weaknesses for both. She was not credible when she gave her testimony. And here you have a judge who made the decision to not apply Bender, not look at objective evidence and otherwise characterize as subjective. My client had more years of experience, received more awards. She had a superior education. She had more knowledge of retail. You have a situation where the deciding official does not select my client, but then goes and asks her to train the person she selected. That evidence is my client's superior knowledge. That was just a couple phone calls, right, about a specific issue? No. She physically came and met with my client at her post office and told her she was not getting the job and that she wanted my client to train. No, I'm talking about the training. I'm sorry. I wasn't clear. The training was done over the phone on a specific issue. On some of those things, that was the case. But I'm talking about after the selection, she asked my client to go back and train the person that was selected. And that evidence is the fact that my client has more skills and abilities when it came to the job in question, which is running the retail unit at Grand Rapids Post Office. I see my time's almost up.  Thank you very much. Thank you. Thank you. Good afternoon. May it please the Court, Carrie O'Massey on behalf of the defendant, Louis DeJoy, the Postmaster General of the United States. This Court should affirm the decision of the District Court granting summary judgment in the favor of the defendant for two reasons. First, the Postal Service articulated legitimate, non-discriminatory reasons for promoting Pear to the supervisor position. Pear was the incumbent. She had successfully been performing this job for almost two years. She learned the retail window position during that time. She learned the actual retail functions during that time, and she learned how to supervise that position. She, for example, was familiar with the retail operations of the business reply mail. She performed stamp transfers and drawer counts. She knew the customer service variance reports. She knew the mystery shopper scores. Counsel, on paper, the plaintiff's qualifications appear to be much superior to those of the person selected. Why isn't this, at a very minimum, a matter of setting out material factual disputes that would be best resolved by a jury? Initially, respectfully, Your Honor, I don't believe that the plaintiff has showed that she has superior qualifications here. In fact, some of the qualifications that Ms. Levine relies on are not things that the postmaster actually considered. They are her opinion of things that she believes the postmaster should have considered. Well, I'm just looking at some of the items on education. The plaintiff had a master's degree in business and management, a bachelor's in business and management, an associate degree in accounting, and the person selected just had a high school diploma. I'm looking at the plaintiff had 27 years and 7 months with the postal service, and the person selected had 7 years and 11 months. The acting EAS experience, the plaintiff had 93.5 months, and the person selected had something over 24 months. The awards, the plaintiff had any number of awards for excellence in connection with her employment, and I don't see any awards by the person who was selected. There was this 100% mystery shopper recognition for overseeing a retail unit for 48 consecutive months, and nothing like that by the person selected, and the list just goes on and on. In spite of all these distinctions, the district judge feels that he needs to dismiss this on summary judgment. Sir, if I may, first just to address a few items on the list that Ms. Levine provided. Again, many of these items are not items that the postmaster actually considered. They were not. A few things are on there. Well, the issue is whether they should have been considered, sir. Perhaps. That's really the problem here. Well, let me start, for example, with the mystery shopper scores. That is an assessment of a clerk's job at a window. So if someone comes into the post office and they ask for certified mail and the clerk does a great job and understands certified mail, that mystery shopper goes back and essentially submits a comment card. That doesn't assess the supervisor's job supervising that clerk. So that's not necessarily a supervisor assessment, and the postmaster provided testimony about that in their deposition. I'd also like to point out that. Why is that so important? I mean, there was only one of any number of awards. Sure. And I don't see where the other employee received any awards of any kind. Your Honor, actually the plaintiff did not do any discovery into whether the promoted candidate received any performance awards or whether the promoted candidate received any mystery shopper scores. He did not ask her those questions in her deposition, and he did not request any written discovery. So there is nothing in the record to say whether or not Pierre had any performance awards or mystery shopper scores. It's not in the record. So to actually say that she had zero is not correct. I don't understand that argument. The post office was free to provide that in connection with the papers found, the arguments found in connection with the motion for summary judgment. In fact, that would have been the appropriate time to have presented such evidence. Perhaps. But again, Your Honor, these were not things. The mystery shopper scores does not assess a supervisor, and that was part of it. Well, that's only one item, though. Sure. I mean, the person doesn't even have a college degree. I mean, the distinctions between these two in terms of qualifications is just immense, and the matter doesn't even get permitted to go to the jury. I don't know what the basis for the district court's decision is. Well, Your Honor, here, again, in order to get to the jury, Ms. Levine has to show more than that they were similarly qualified. She had to be so superior qualified that no reasonable jury could find that Pierre should not have been promoted here. Excuse me. Or the jury can show that she was the superior candidate, perhaps not to the extent that that particular standard would require, but show that she was the superior candidate and there are indications of pretext. Yes, absolutely correct. And here, you know, the reason that this did not get to a jury is there's just absolutely no probative evidence of discrimination here. There's nothing to support a finding of racial animus here. Ms. Levine admitted that the postmaster never mentioned anything about her race. There is evidence in the record that the postmaster promoted two African American employees to supervisor positions in the year prior. But there's also evidence that her reasons were not her real reasons, or were, first of all, she never considered, as I understand, the recommendation from Levine's supervisor, right? I believe she, sure, I believe the postmaster was aware of the recommendation. She ultimately decided to promote Pierre, who had been in the position successfully for two years, and thought that that was the better fit to continue with, essentially, the status quo of the employee who had already been doing the job for two years and had been doing it very well. But Levine had also done it before and had done it very well as well. Yes, she had. And there's no, the Postal Service does not dispute that, but for 23 months. And she also said that her, but it seemed to me that her main reason was that she thought that Levine's, Levine would be too nice to the employees. I agree. There would be a pushover, but then she was unable to articulate in what way she thought that. I believe, Your Honor, that one of the reasons, yes, that the postmaster did not select Ms. Levine was that she felt Ms. Levine's style would be more accommodating. And she did specifically refer to answers in the interview questions where Ms. Levine seemed to believe that essentially being nice to employees was going to be a way to help with grievances and attendance issues, which was a pretty hot issue at the time. And Pierre, on the other hand, was dealing with, actively during the time of the interview process and for the 23 months before, dealing with these attendance issues and the grievances and had been successfully reducing the grievances and the attendance deficiencies of this particular group of employees here. I do believe that Mullins has been consistent with her reasons for promoting Pierre here. This is a supervisory appointment. It's a lower-level appointment. She didn't believe that education was essential. She was really focusing on who can come in and run this unit, who can help out in the customer services area. They were short supervisors. She wanted someone who could come in and supervise carriers and supervise the retail window unit, and Pierre was the one who had been doing that. She'd been doing it well for two years, and there's no evidence that— So there's no—in what way did this job supervise carriers? There was—it was part of the posting. Admittedly, at the time that this position was taking effect, there were no carriers on-site at this main office. However, the postmaster had testified that they were just short-staffed, so she needed someone who would essentially be able to float around to other units within customer services, and that would include the carrier unit where they sometimes needed supervisors to fill in, and Pierre was able to help do that. Also, just wanted to bring to the court's attention that even some of the cases that the plaintiff cites where she's talking about qualifications evidence, the courts in that case not only look to the qualifications but reverse summary judgment because there was this probative evidence of pretext. There's the Reese versus the Royal Post Office case, and that was an age discrimination case where they reversed summary judgment, this court did, because there were actual comments made—I'm sorry, that was a gender discrimination case— male police officers were making comments to female police officers that they would never get promoted. So there was this probative evidence of discrimination to get through the summary judgment stage in that case. But that was a direct evidence issue there. This is not an argument that the case would be decided based upon direct evidence here, so we're under McDonald-Douglas. Correct, and here there just simply isn't anything to show that Mullins was dishonest, that Reese played any role. She was consistent during the interview process. Everyone had the same questions. She promoted the incumbent candidate who had already been doing the job and had been doing it well. She promoted a candidate who had very versatile experience. I do understand that Ms. Levine in her chart put that she had 93 months of EAS experience, but she only actually had 15 months of customer services supervisory experience. Pierre had 28 months of customer services supervisory experience. So the postmaster was looking for relevant supervisory experience. Ms. Levine is referring to some details that she did in marketing and human resources years earlier that weren't necessarily relevant to the job that the postmaster was looking to fill at the time. And as to the mendacity and the credibility arguments, I don't believe that the record supports a finding that the district court judge made any findings of credibility. In fact, the cases that Ms. Levine cites were bench trials. They're not cases where there's a discussion of mendacity and a reversal on summary judgment. There's no basis for finding that here. There is some evidence that it was a lapse of memory. We're talking about a passage of time between the deposition here. Mullins has been consistent. Arguably, she misstated the time that Ms. Levine was in the initial detail, but the postmaster had the application materials, which stated the amount of time that Ms. Levine was in that initial detail. The postmaster agreed that Ms. Levine did that well, so there isn't an issue that the postmaster did not think that Ms. Levine did a good job in that, but that Ms. Levine or I'm sorry, that the postmaster was focused on who had already been doing the job, who had been doing it well, who had the experience in customer services with the particular group of employees that she would inherit, who was handling their attendance issues and the grievance issues. In this case, that was Kathleen Pierre, and that's who the postmaster decided to promote. There isn't any other probative evidence here to support that race had any role. The postmaster offered details or at least a detail to Ms. Levine, which the district court noted somewhat undermines any finding that race played a role in this decision. And as I mentioned, the postmaster has promoted African-American women to supervisory positions. Unless the court has any other questions, the government requests that the court affirm the decision of the district court. Thank you. All right, thank you. We'll hear rebuttal. Thank you. As for the qualifications that are set out in the chart in our brief, that information came from the employee's applications for the position or from their resumes. There was no need to do any sort of discovery about people's skills or awards. You would think that people would put that into their application. Again, it's important to point out that Pierre testified that she had only been in the position for maybe a year, the complainant. However, when she gave up the position, signed over her stamp stock to someone other than Pierre, so she clearly wasn't in the position immediately following the plaintiff occupying the position in question as a detailee. As far as being short-staffed, there were other positions that were being filled at the same time. That would have eliminated any issues with short-staffing. As to other supervisors, the postmaster in that case also selected Caucasian employees. The plaintiff was not trying to compete for those positions, which were positions that are supervised carriers. She was focused solely on the position of the retail office in Grand Rapids. She was asked to do the detail because, in the first place, as she testified to, the person who was in the position had resigned or retired unexpectedly, and they needed someone who could come in and supervise the office. She stepped up. She did the job. She did it well. It would have continued, would have done it, except for the fact that her daughter took ill. Contrary to Ms. Mullins' testimony, she was never asked to work as a supervisor in customer service. She denies the testimony that she was asked several times. You have Ms. Mullins testifying six months in her EEO affidavit administratively, six months after the selection, that the plaintiff only had two months' experience, not seven months in the position. And I'd point out the court's holding in Bartlett v. Gates, where it involved the contracting officer selection position, in which the court reversed the findings, finding that the plaintiff's superior education and more years of experience and the selecting official's lack of familiarity with the employee's qualifications was enough to not overturn summary judgment. Here you have Ms. Mullins who, six months after the fact, does not have knowledge of the plaintiff's qualifications. She clearly doesn't look at education. She doesn't look at the full resume to show which evidence is my client's qualifications. We submit, given this, given Mullins' statements during her deposition and the mendacity that's at issue and her being disgenuous, that there are issues of fact and there are probative evidence based on her skills and abilities and these things that are enough to go to a jury, even in the absence of any evidence of racial discrimination. Thank you. Thank you very much. I appreciate your time today. And the case is submitted.